IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.P. MOLLER - MAERSK A/S, TRADING AS MAERSK LINE, <br>     Plaintiff <br><br> VS. <br><br> LCL LOGISTIX (INDIA) PVT, LTD., REFLEX INTEGRATED LOGISTICS PVT LTD. and STIM TECH, LLC d/b/a/ STIM TEQ, LLC <br>     Defendants | § § § § § § § § § § § § | C.A. NO. 4:13-cv-00128 <br><br> Admiralty - Rule 9(h) |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff A.P. Møller - Maersk A/S trading as Maersk Line ("Plaintiff" or "Maersk") files its Original Complaint against Defendants LCL Logistix (India) PVT Ltd. ("LCL"), Reflex Integrated Logistics PVT Ltd. ("Reflex"), and Stim Tech, LLC d/b/a/ Stim Teq, LLC ("Stim Teq") and respectfully would show as follows:

### I.

### JURISDICTION

1. This action arises from the carriage of cargo by sea from Visakhapatnam, India to Houston, Texas pursuant to maritime contracts. Accordingly, the Court has original jurisdiction of these admiralty and maritime claims under 28 U.S.C. § 1333(1). Maersk designates this as an admiralty claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. Alternatively, this Court has original alienage jurisdiction over the claims against defendant Stim Teq pursuant to 28 U.S.C. § 1332(a)(2), because this is a suit between a foreign plaintiff and a United States citizen and

the amount in controversy exceeds $75,000.00, and supplemental jurisdiction over the claims against LCL and Reflex pursuant to 28 U.S.C. § 1367(a) because said claims form part of the same case or controversy.

## II.

## PARTIES AND SERVICE OF PROCESS

2.   Maersk is a Danish corporation, with its principal place of business at Esplanaden 50, 1098 Copenhagen K, Denmark, that specializes in the transportation of containerized ocean cargo. Maersk brings this action on its own behalf and as agent and trustee on behalf of and for the interest of all parties who may be or become interested, as their respective interests may appear, and Maersk is entitled to maintain this action.

3.   Defendant LCL Logistix (India) PVT Ltd. is a foreign business entity with its principal place of business at No-3, 1st Floor, Nowroji Road Chetpet, Chennai, India 600 031. LCL is not authorized to do business within the State of Texas but, at all times material, did business in Texas as a non-vessel operating common carrier ("NVOCC"), freight forwarder, and/or logistics provider, entering into service contracts and/or other contracts of carriage which were performable in whole or in part in Texas and/or in the United States as a whole, each of which constitutes doing business in Texas under Section 17.042 of the Texas Civil Practice & Remedies Code. LCL is a non-resident of the United States and, pursuant to 28 U.S.C. §1391, may be sued in any judicial district. LCL has no office, officers, directors, or registered agents within the District. LCL may be served at its principal place of business, in accordance with the Convention on Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters ("Hague Convention"), by forwarding duplicate originals of process with this Original Complaint, in English, to the Ministry

of Law and Justice, Department of Legal Affairs, Room No. 439A, 4th Floor, A-Wing, Shastri Bhawan, New Delhi-110001, India.

4. Defendant Reflex Integrated Logistics, PVT Ltd. is a foreign business entity with its principal place of business at Sudarshanam Towers, 1st Floor, No. 6 & 8, Coral Merchant Street, Mannady, Chennai, India 600 001. Reflex is not authorized to do business within the State of Texas but, at all times material, did business in Texas as an NVOCC, freight forwarder, and/or logistics provider, entering into service contracts and/or other contracts of carriage which were performable in whole or in part in Texas and/or in the United States as a whole, each of which constitutes doing business in Texas under Section 17.042 of the Texas Civil Practice & Remedies Code. Reflex is a non-resident of the United States and, pursuant to 28 U.S.C. §1391, may be sued in any judicial district. Reflex has no office, officers, directors, or registered agents within the District. Reflex may be served at its principal place of business, in accordance with the Hague Convention, by forwarding duplicate originals of process with this Original Complaint, in English, to the Ministry of Law and Justice, Department of Legal Affairs, Room No. 439A, 4th Floor, A-Wing, Shastri Bhawan, New Delhi-110001, India.

5. Defendant Stim Tech, LLC d/b/a/ Stim Teq, LLC is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 9033 Larston Street, Houston, Texas 77055. Stim Teq may be served with process via service on its registered agent, Mr. Greg Brown, at 9033 Larston Street, Houston, Texas 77055.

## III.

## FACTS

6. This action arises from the ocean carriage from Visakhapatnam, India to Houston, Texas of a sealed shipping container loaded with improperly packaged, overfilled, non-conforming, incorrectly labeled, and incorrectly stowed drums of hydrochloric acid ("HCL acid"). As a result of the overfilled, non-conforming and improper packaging, and incorrect stowage, HCL acid leaked from the drums while in transit, damaging the shipping container and necessitating a costly emergency clean-up response. LCL, Reflex, and StimTeq refused to take delivery of and abandoned the cargo after its arrival at the Port of Houston, resulting in substantial costs being incurred by Maersk. To date, in spite of due demand, each and all of the Defendants have refused to (I) take delivery of the cargo, and (ii) pay for the cleanup costs, freight, demurrage, and other costs associated with the incident, which they are obligated to pay under the terms of the governing contracts of carriage, and as a result of each entity's breach of contract and negligent acts and/or omissions.

7. Prior to shipment of the subject cargo, LCL and Maersk entered into Service Contract No. 515667, which provided preferred freight rates for the carriage of marine cargo to LCL and its affiliates ("the Service Contract"). The Service Contract reflected that carriage of goods and other services provided by Maersk pursuant to the Service Contract are subject to the terms and conditions of the Maersk bill(s) of lading governing the carriage of the cargo as well as the applicable tariff(s).

8. On information and belief, Reflex is an agent, affiliate, or subsidiary of LCL.


9. On or about January 2, 2012, Reflex, or an agent acting on its behalf, stowed 74 drums containing HCL acid in plaintiff owned Container No. PONU1289228 ("the container"), and sealed the container for ocean carriage from India to Houston, Texas.

10. Subsequently, Reflex contacted Maersk and booked the container for ocean carriage to Houston. The transaction was booked under the Service Contract and assigned Booking No. 863265279.

11. On or about January 5, 2012, the container was tendered to Maersk at Visakhapatnam, India for shipment to Houston, Texas. Maersk accepted the cargo and issued Bill of Lading No. MAEU863265279 ("Bill of Lading"), naming Reflex as the shipper and Stim Teq as the consignee. The Bill of Lading was issued expressly subject to the Maersk Terms & Conditions of Carriage ("Maersk Terms & Conditions").

12. On or about January 7, 2012, the container was loaded onboard the M/V SILVER FERN (Voyage 009E) for carriage to Colombo, Sri Lanka. The container was then transshipped on the M/V MAERSK DANANG (Voyage 1202) for carriage from Sri Lanka to Houston.

13. On or about January 23, 2012, after arrival at the APM Terminal at the Port of Houston, Texas, the container was found to be leaking HCL acid. Upon opening the sealed container, it was discovered the drums had leaked HCL acid because they: (I) were overfilled; (ii) were nonconforming, unapproved and consequently inadequate for carriage of HCL acid; and (3) were improperly stowed in the container. Moreover, the container was improperly tagged and its exterior bore incorrect hazardous material safety placards.

14. Upon discovery of the HCL leakage, Maersk mobilized efforts to immediately stop the leakage and remove the previously spilled HCL acid. Maersk retained a local hazardous

materials specialist to manage the emergency spill clean-up response, including stopping the leakage and removing the spilled HCL acid. The spilled HCL acid was cleaned up and the 74 drums of HCL acid were re-packed into over-pack drums and loaded into two replacement containers, all at significant expense to Maersk.

15. Defendants abandoned the cargo at the APM Terminal and refused to pay for either (I) the cleanup costs incurred as a result of the emergency spill response, or (ii) the freight, demurrage, and other costs unavoidably incurred by Maersk as a result of this incident.

16. Ultimately, Maersk sold the HCL acid to the highest bidder at a salvage sale, for $10.00.

### IV.

### FIRST CAUSE OF ACTION AGAINST
### LCL AND REFLEX - NEGLIGENCE

16. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-15 as if fully set forth herein.

17. At all material times, LCL and Reflex were the freight forwarders, logistics providers, NVOCCs, and/or shippers of the subject cargo, and so were responsible for the proper packaging and marking of the subject cargo.

18. Defendants LCL and Reflex failed to comply with multiple regulations found in Chapter 49 of the Code of Federal Regulations controlling the packaging of hazardous materials to be shipped by an ocean carrier to the United States, including but not limited to the following:

   a. Offering a hazardous material for transportation in a packaging that leaks during conditions normally incident to carriage. 49 C.F.R 173.24(b);

      b.      Overfilling a package so that the effectiveness of the package is substantially reduced. 49 C.F.R 173.24(b)(2);

      c.      Overfilling a package so that it leaks, causing hazardous material residue to adhere to the outside of the package during transport. 49 C.F.R. 173.24(b)(4);

      d.      Offering a hazardous material for transportation in a packaging whose closures leak during conditions normally incident to carriage. 49 C.F.R. 173.24(f);

      e.      Overfilling a package so that insufficient ullage is left, such that leakage and permanent distortion of the packaging occur as a result of an expansion of the liquid caused by temperatures normally incident to and likely to be encountered during transportation. 49 C.F.R. 173.24(h);

      f.      Offering a hazardous material for transportation in an unauthorized non-UN standard packaging. 49 C.F.R. 173.22(a)(2); and

      g.      Failure to properly placard a freight container containing hazardous materials in accordance with 49 C.F.R. 172.504.

19.    LCL and Reflex's negligent failure to comply with regulations for the shipment of hazardous materials triggers liability without fault and liability based on negligence and/or negligence *per se* for the total amount of the damages incurred by Maersk as a result of said failure, that is, damages in the amount of at least $162,722.32.

## V.

### SECOND CAUSE OF ACTION AGAINST
### LCL, REFLEX, AND STIM TEQ - BREACH OF CONTRACT

20.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-19 as if fully set forth herein.

21.    At all material times, LCL was the freight forwarder, logistics provider, and/or NVOCC of the subject cargo, the carriage of which LCL and/or its affiliate Reflex booked with

-7-

Maersk pursuant to the Service Contract and for which Maersk issued the Bill of Lading. Under the governing contract of carriage and other applicable contracts, LCL was subject to and bound by the Maersk Terms & Conditions.

22. At all times material, upon information and belief, Reflex was the freight forwarder, logistics provider, and/or NVOCC of the subject cargo, the carriage of which LCL and/or its affiliate Reflex booked with Maersk pursuant to the Service Contract and for which Maersk issued the Bill of Lading. Additionally, Reflex was the shipper of the cargo under the Bill of Lading. Under the governing contract of carriage and other applicable contracts, Reflex was subject to and bound by the Maersk Terms & Conditions.

23. At all times material, Stim Teq was the owner, receiver, and/or consignee of the subject cargo under the Bill of Lading and so was subject to and bound by the Maersk Terms and Conditions.

24. As more fully detailed below, Defendants breached their contract of carriage with Maersk by tendering cargo to Maersk which was insufficiently packaged in a manner inadequate to withstand the routine rigors and risks of ocean carriage, failing to adhere to international standards for the packaging and shipment of hazardous materials, and failing to pay the agreed freight and other expenses associated with the shipment and failure to accept delivery of their goods.

25. Under the governing contract(s) of carriage or other applicable contract, and the course of dealing of the parties, Defendants were responsible for ensuring proper packaging of the subject cargo in a manner adequate to withstand the routine rigors and risks of ocean carriage. Defendants, or those acting by, through, or on their behalf, failed to properly package the subject cargo for shipment in breach of the governing contract(s) of carriage. As such, Defendants are each

jointly and severally liable for the damages, costs, and expenses arising from of the insufficient packaging of the subject cargo, including but not limited to costs of emergency spill cleanup response and demurrage, and must indemnify Maersk for same. *See* Maersk Terms & Conditions, Cl. 11.2, available at www.maerskline.com.

26. Further, Reflex, on behalf of itself and each of the other Defendants, executed a statutory declaration contained in the Multimodal Dangerous Goods Form for the subject cargo certifying that the drums of HCL acid were properly packaged, marked, labeled/placarded, and otherwise fit for transport per the applicable international and national government regulations. Defendants warranted under the contract of carriage that the cargo was packed both to withstand the usual risks of carriage and in compliance with all applicable laws and regulations. The statutory declaration contained in the Multimodal Dangerous Goods Form was false, and Defendants breached their warranty under the contract of carriage. As such, Defendants are each jointly and severally liable for the damages, costs, and expenses arising from the insufficient packaging of the subject cargo, including but not limited to costs of emergency spill cleanup response and demurrage, and must indemnify Maersk for same. *See* Maersk Terms & Conditions, Cls. 21.2 and 21.3.

27. Further, under the applicable contract(s), Defendants were obliged to pay the full freight due and owing for the shipment of the subject cargo. Defendants abandoned the cargo and refused to pay the freight owed for the shipment. As such, Defendants are in breach of the governing contract(s) of carriage and are jointly and severally liable for the unpaid freight, as well as service fees, interest, attorney's fees, and expenses incurred in collection of the unpaid freight. *See* Maersk Terms & Conditions, Cls. 16.2 - 16.7.

## VI.

## DAMAGES

28.     As a result of the Defendants' negligence and breaches of the governing contract(s) of carriage, Maersk proximately has sustained damages in the amount of not less than $162,722.32, demand for which has been made upon each Defendant and which remains unpaid and accruing as of the filing of this suit. The costs and expenses due and owing to Maersk include but are not limited to the following:

| | | |
|---|---|---:|
| a. | Maersk Import Invoice No. 5245427656 (B/L destination charges) | $995.00 |
| b. | Maersk Demmurage Invoice No. 5246069776 (demurrage for container PONU1289228) | $3,375.00 |
| c. | CTS Limited, LLC Invoice INV-60004 (Hazmat Cleanup - Surveyor) | $1,435.00 |
| d. | M&M Protection, LLC Invoice MAE022912 (Hazmat Cleanup) | $4,787.15 |
| e. | M&M Protection, LLC Invoice MAE022312 (Hazmat Cleanup) | $65,995.44 |
| f. | Universal Maritime Service Corp. Invoice HOU12XM05005 | $6,994.73 |
| g. | Maersk Demurrage Invoice No. 5246057201 for Container MSKU1325310 and PONU7845896 to which leaking cargo was trans-loaded | $72,450.00 |
| h. | Attorneys' Fees Incurred to Date | $6,000.00 |
| I. | Depreciated Value of Damaged, Unusable Container - From Invoice 5246251799 | $700.00 |
| j. | Less Salvage Sale of HCL Acid | -$10.00 |

## VII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff A.P. Møller - Maersk A/S, trading as Maersk Line respectfully requests that:

A. Plaintiff have judgment against Defendants LCL Logistix (India) PVT Ltd., Reflex Integrated Logistics PVT Ltd. and Stim Tech, LLC d/b/a Stim Teq, LLC, jointly and severally, in an amount to be shown at trial of this matter but currently approximating at least $162,722.32 plus pre-judgment interest, post-judgment interest, costs, and attorneys' fees;

B. Defendants LCL Logistix (India) PVT Ltd., Reflex Integrated Logistics PVT Ltd. and Stim Tech, LLC d/b/a Stim Teq, LLC be cited to appear and answer in this matter; and

C. Plaintiff have such other and further relief as justice and equity allow.

Respectfully submitted,

By: /s/ Richard L. Gorman
    Richard L. Gorman
    State Bar No. 00784155
    Fed. I.D. 15685
    12335 Kingsride Lane #354
    Houston, Texas 77024
    Telephone: (832) 725-4026
    Email: rg@richardgormanlaw.com
    Attorney-in-Charge for Plaintiff A.P.
    Møller - Maersk A/S, trading as Maersk Line

OF COUNSEL:

RICHARD GORMAN LAW

01781/Complaint.12-17-12